■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LAWRENCE PATTERSON, Appellant. [598 NYS2d 328] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Orgera, J.), rendered March 19, 1991, convicting him of robbery in the first degree and robbery in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant was convicted of robbing a victim, in Queens, at gunpoint. When the victim reported the robbery, he described the defendant's car, including the last three numbers of its license plate. Based on that description, the police traced the car to the defendant, and the victim identified him as the robber at a lineup and at trial. The two alibi witnesses testified that the defendant spent the entire night of the robbery at a Brooklyn apartment, playing video games and watching videotaped movies, including "House Party". On cross-examination, the alibi witnesses testified that they and the defendant made a quick trip to the defendant's room, which was in another apartment in the same housing project, to collect some belongings. One of the alibi witnesses, the defendant's fiancee, testified on cross-examination that later that night, between 9:30 P.M. and 12:30 A.M., she and the defendant also took a walk through the parking lot of their housing project, and saw the defendant's car there. The other alibi witness testified that, once the three of them returned from collecting the belongings, the defendant and his fiancee did not go out again. She also testified on cross-examination

that she had purchased the videotape "House Party" from a street vendor about two weeks before the night of the robbery, and that the defendant had watched this movie, and another, alone.

In rebuttal, the prosecutor called three witnesses. The first was a police detective who, while investigating the robbery, interviewed the other alibi witness. She told him that once the defendant and his fiancee arrived at her apartment, they never went out again; she did not mention a trip to collect belongings. The alibi witness also told him that she had copied the videotape "House Party" from a friend's master copy, and that the defendant and his fiancee had watched the movies together. The second rebuttal witness was a New York City bus driver who had observed the defendant's car in Queens, approximately a mile from the robbery site, about 10 minutes before the robbery. The third rebuttal witness was an employee for a major videotape distributor, who testified that the videotape "House Party" did not become commercially available for sale or rental until nearly two months after the robbery.

We disagree with the defendant's contention that this rebuttal testimony pertained to collateral matters and was therefore inadmissible. While a witness may not be impeached with extrinsic evidence on a collateral issue *(see, People v Harris,* 57 NY2d 335, *cert denied* 460 US 1047; *People v Wise,* 46 NY2d 321)*, extrinsic impeachment evidence is not collateral if it is relevant to the alibi defense and offered to disprove facts set forth by the defendant's alibi witnesses *(see, People v Cade,* 73 NY2d 904), even if those facts were extracted during cross-examination and the rebuttal testimony does not flatly contradict them but "merely undermine[s] the believability of the alibi witnesses' story" *(People v Knight,* 80 NY2d 845, 847). Under *People v Knight (supra,* at 847), extrinsic evidence is not admissible if offered solely on the issue of the witness's general credibility but may be admitted to the extent that it bears on the truthfulness of the alibi if it is "used to challenge the validity of the alibi, a material issue in the case". If this threshhold is met, the fact that the evidence also tends to impeach the witness' credibility does not render the evidence collateral *(see, People v Gross,* 171 AD2d 810; *People v Beavers,* 127 AD2d 138).

Here, each of the disputed pieces of rebuttal testimony tended to disprove a fact testified to by the alibi witnesses in constructing the defense. The bus driver's testimony tended to prove that the defendant was not in Brooklyn but in Queens

at the time of the robbery. The distributor employee's testimony showed it less probable that the defendant and/or his fiancee actually watched "House Party" on the night of the robbery. The detective's rebuttal impeached the chronology of the night's events to which the alibi witnesses testified, and, together with the distributor employee's testimony, tended to prove that the defendant had not been watching that particular videotape *(see, People v Burwell,* 159 AD2d 407). Here, as in *People v Knight (supra,* at 847), "the extrinsic evidence was used to challenge the validity of the alibi, a material issue in the case, and was therefore not limited to collateral significance".

We have considered the defendant's remaining contentions and find them to be without merit. Lawrence, J. P., O'Brien, Copertino and Santucci, JJ., concur.